IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PATRICK MANNING, II,

      Plaintiff,

v.

                                              Case No. 24-CV-198-RAW-JAR

C.O. JORDAN, et al.,

      Defendants.

**OPINION AND ORDER**

Plaintiff Patrick Manning, II, a state prisoner appearing *pro se* and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Dkt. No. 1. Defendants C.O. Jordan and Christe Quick ("Defendants") have submitted a Motion to Dismiss and/or Motion for Summary Judgment [Dkt. No. 22]. In response, Plaintiff filed a motion invoking Rule 56(d) of the Federal Rules of Civil Procedure [Dkt. No. 23], arguing he presently cannot present facts essential to his opposition. For the reasons discussed herein, the Court grants in part and denies in part Defendants' Motion to Dismiss and/or Motion for Summary Judgment and grants Plaintiff's Rule 56(d) motion.

I.      **Plaintiff's Allegations**

In his pleading, Plaintiff contends his constitutional rights were violated while he was housed at the Oklahoma State Penitentiary ("OSP"), in McAlester, Oklahoma. Dkt. No. 1, at 2.[1] Plaintiff claims that on August 10, 2023, the day following his arrival at OSP, he was ordered to report to kitchen duty but refused due to his age and pre-existing injuries. *Id.* at 2-3. Plaintiff states he immediately "started the grievance process to be removed from the kitchen duty roster."

_____

[1] The Court's citations refer to the CM/ECF header pagination.

*Id.* at 2.  Plaintiff claims he was placed in segregation the following day, in retaliation for filing the grievance, and was threatened by the case manager with "continued segregation to his cell, dropping of his class level to Level 1, and . . . remaining in that state per orders of Warden Quick." *Id.*

Plaintiff additionally claims that on the morning of August 12, 2023, Defendant Jordan entered Plaintiff's cell and asked why he had not reported for kitchen duty.  *Id.* at 3.  Plaintiff responded that he had submitted grievance paperwork and that Defendant Jordan was "a little young to be [his] daddy."  *Id.*  In response, Defendant Jordan "beat[] plaintiff in the face and head, while plaintiff was restrained by bed covers," "wrestled plaintiff into a chokehold[,] and choked plaintiff until he was rendered unconscious."  *Id.*  Plaintiff contends he "woke sometime later, bent over his bunk with his bedding soaked with blood."  *Id.*  Plaintiff states that he "requested his case manager take photos of his injuries and report the assault," and that he "remained locked in his cell, extracted from general population for sixty-eight (68) days without a disciplinary report or hearing," as "punishment" for his attempt to seek redress.  *Id.*  Plaintiff claims he was "denied showers and sporadically denied meals" during this time.  *Id.*  Plaintiff states that his grievances regarding these matters were ignored and unanswered, rendering administrative remedies unavailable. *Id.* at 6, 9-10, 12-16.

Plaintiff brings claims of excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment.  Plaintiff additionally asserts that his Fourteenth Amendment Due Process rights were violated when he was segregated for 68 days without "notice, hearing, review," or the opportunity to "present evidence," *id.* at 6, and that impediments to the prison's administrative grievance process violated his First Amendment right to petition the government for redress, *id.* at 19.  Plaintiff sues Defendant Jordan in his individual capacity and

Defendant Quick in her individual and official capacities. *Id.* at 2. He seeks compensatory and punitive damages against both Defendants, as well as injunctive relief against Defendant Quick in her official capacity requiring her "to properly institute grievance procedures in accordance with the law and regulations." *Id.* at 18-20.

## II.    **Defendants' Motion**

Defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants raise the following propositions in their Motion: (1) "Plaintiff failed to exhaust administrative remedies," (2) "the Eleventh Amendment bars Plaintiff's claims against Defendant Quick in her official capacity," (3) "Plaintiff fails to state a claim for First Amendment retaliation," (4) "Plaintiff fails to state a claim for access to the courts," (5) "Plaintiff fails to state a claim for violation of the Eighth Amendment," (6) "Plaintiff fails to state a claim for violation of the Fourteenth Amendment," (7) "Plaintiff is not entitled to declaratory or injunctive relief," and (8) "Defendant Jordan and Quick are entitled to qualified immunity on Plaintiff's claims." Dkt. No. 22, at 2-3.

Despite their styling, propositions 1, 3, 4, 5, 6, and 7 rely on materials contained in the Special Report submitted on December 9, 2024 [Dkt. No. 20], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The Court construes arguments relying on materials outside of the pleadings as arguments for summary judgment under Rule 56.[2] *See Hall v. Bellmon*, 935

---

[2] Proposition 7 contains only one sentence: "Plaintiff has not properly asserted an actual constitutional violation therefore the Plaintiff is not entitled to injunctive or declaratory relief because there is no ongoing constitutional violation." Dkt. No. 22, at 28. This underdeveloped argument implicitly relies on Defendants' previous propositions, which in turn rely on materials outside of the pleadings. Accordingly, the Court finds it, too, should be construed as an argument for summary judgment under Rule 56.

F.2d 1106, 1109-11 (10th Cir. 1991).  As noted, Plaintiff has filed a motion under Rule 56(d) of the Federal Rules of Civil Procedure, arguing addition discovery is required before he can adequately oppose summary judgment.  Dkt. No. 23.  For the reasons discussed below, the Court finds the motion should be granted.  Because, however, Plaintiff's Rule 56(d) motion implicates only Defendants' Rule 56 arguments for summary judgment, the Court will separately consider Defendants' arguments for dismissal, including those based on Eleventh Amendment immunity and qualified immunity, and a sub-argument in proposition 5 that challenges only the sufficiency of the Complaint's allegations.

a.  Excessive-Force Claim against Defendant Quick

Proposition 5 contains the sub-argument that Plaintiff fails to state an excessive-force claim against Defendant Quick because Plaintiff "fails to present any allegation of any personal action on the part of [Defendant] Quick relating to [Plaintiff's] supposed injuries."  Dkt. No. 22, at 26. To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff.  *See Twombly*, 550 U.S. at 555-56.  Further, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall*, 935 F.2d at 1110.

A government official cannot be held liable under § 1983 on a theory of *respondeat superior*.  *See Dodds v. Richardson*, 614 F.3d 1185, 1195-96 (10th Cir. 2010).  It is "not enough" for a plaintiff "merely to show [the] defendant was in charge of other state actors who actually

committed the violation." *Id.* at 1195 (internal quotation marks omitted). Rather, to establish supervisory liability, a plaintiff must demonstrate "an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (internal quotation marks omitted). This requires a plaintiff to demonstrate "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *George v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022) (quoting *Dodds*, 614 F.3d at 1199).

Plaintiff contends Defendant Quick is liable for the alleged use of excessive force because Defendant Jordan's actions "were consistent with OSP customs of punishing inmates for exercising their right to access the court," and that Defendant Quick "instituted and made common practice the pattern of failing to exercise reasonable care in the employment of [Defendant] Jordan in the circumstances involving the use of excessive force to effect inmate cooperation and properly supervise [Defendant] Jordan or adopt adequate disciplinary policies for his misconduct." Dkt. No. 1, at 17-18. Plaintiff further claims:

> Defendant Quick encouraged excessive force incidents; failed to investigate the incidents properly; and covered for the correctional officers. There have been numerous assaults on inmates during defendant's tenure. Defendant Quick had knowledge for the need of improvement, but made none. This gave the correctional officers the green light to violate inmates' civil rights. The correctional officers bragged about the intercepting of grievances by defendant, who knew there were clusters of excessive force claims and shelved many of the complaints. The unconstitutional actions of Defendant Quick resulted in the unofficial custom and policy that resulted in the assault of an elderly inmate, the plaintiff.

*Id.* at 21.

The Court finds these allegations sufficient to state an Eighth Amendment supervisory liability claim against Defendant Quick. Supervisors "may be liable under § 1983 where an

5

'affirmative' link exists between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy—express or otherwise—showing their authorization or approval of such misconduct.'" *Dodds*, 614 F.3d at 1200-01 (ellipses omitted) (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)). Here, Plaintiff plausibly alleges Defendant Quick implemented a policy or custom whereby correctional officers could use excessive force against inmates without repercussion. He alleges Defendant Quick was aware of "clusters of excessive force claims," yet disregarded the pattern of unconstitutional conduct, and personally "intercept[ed]" and "shelved" prisoner grievances pertaining to the unconstitutional conduct. Dkt. No. 1, at 21. A factfinder reasonably could infer from these allegations that the policy "set in motion a series of events that [Defendant Quick] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (internal quotation marks omitted).

The remaining issue, whether Defendant Quick possessed the requisite state of mind, is more nuanced. In *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146 (10th Cir. 2006), the Tenth Circuit applied the "deliberate indifference" standard to a supervisor's liability for a subordinate's use of excessive force against a prisoner. However, "it remains an open question whether that standard still applies in the wake of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Stevenson v. Cordova*, 733 F. App'x 939, 949 (10th Cir. 2018) (citing *Dodds*, 614 F.3d at 1197-99).[3] In addressing the state-of-mind element, the Tenth Circuit in *Dodds* held that, post-*Iqbal*, a plaintiff "may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating . . . [he] acted with the state of mind required to establish

---

[3] The Court cites unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the alleged constitutional violation." *Dodds*, 614 F.3d at 1199.

With regard to Eighth Amendment excessive force claims, a plaintiff must prove the official "acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018). Typically, "[a]n official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* at 936-37 (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). However, in *Whitley v. Albers*, 475 U.S. 312 (1986), the U.S. Supreme Court articulated this standard specifically for circumstances in which "a prison security measure is undertaken to resolve a [prison] disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff" and "decisions [are] necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320 (addressing, in part, claims against prison Superintendent and Assistant Superintendent who determined during a prison riot that "forceful intervention was necessary to protect the life of [a] hostage and the safety of the inmates who were not rioting"). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the U.S. Supreme Court extended the *Whitley* standard to encompass both riots and "lesser disruption[s]." *Hudson*, 503 U.S. at 6-7. Both *Whitley* and *Hudson* provide that, "when authorities use force to put down a prison disturbance," the "question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (internal quotation marks omitted).

Here, the alleged actions of Defendant Quick were not undertaken to quell a prison riot or lesser disturbance and did not carry the attendant pressures of possible imminent harm or the necessity for haste. As such, it is not clear that the question of whether Defendant Quick "inflicted

7

unnecessary and wanton pain and suffering" turns on whether she acted "maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (internal quotation marks omitted). Though the precise parameters of supervisory state of mind in this context "remain[] an open question," *Stevenson*, 733 F. App'x at 949, the Court nonetheless finds the allegations sufficient to demonstrate Defendant Quick acted with a sufficiently culpable state of mind, as her alleged actions "evince[] such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321-22 (finding that, if "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," the case should "go to the jury"); *id.* at 322 (noting that deference to prison administrators in the adoption and execution of policies and practices "does not insulate from review actions taken in bad faith and for no legitimate purpose"); *see Dodds*, 614 F.3d at 1199, 1201 ("[W]e properly impose § 1983 liability upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights.").

Accordingly, the Court finds Plaintiff has stated a plausible supervisory liability claim against Defendant Quick for excessive force in violation of the Eighth Amendment.

   b. Eleventh Amendment Immunity

In proposition 2, Defendants argue that the claims for monetary damages against Defendant Quick in her official capacity are barred by the Eleventh Amendment. Dkt. No. 22, at 19-20. Citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), Defendants additionally argue that state "officers sued officially" are not "'persons' under 42 U.S.C. § 1983, and therefore, they cannot be sued under that statute" for damages. Dkt. No. at 20; *see Will*, 491 U.S. at 71 ("[N]either

a State nor its officials acting in their official capacities are 'persons' under § 1983.").

"The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Good v. Dep't of Educ.*, 121 F.4th 772, 788 (10th Cir. 2024) (emphasis and internal quotation marks omitted); *see* U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). Eleventh Amendment immunity encompasses not just suits against the State itself but also suits against "governmental entities that are arms of the state." *Good*, 121 F.4th at 789 (internal quotation marks omitted). Further, "[i]f an agency is an arm of the state, its sovereign immunity from actions for damages extends to its officials sued in their official capacities." *K.A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025). This is so because a suit for damages "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Accordingly, to the extent Plaintiff seeks damages against Defendant Quick in her official capacity, such claims are barred.[4]

   c. Qualified Immunity

In proposition 8, Defendants assert that they are entitled to qualified immunity. Dkt. No. 22, at 28-29. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

[4] Defendants do not specifically address the *Ex parte Young* doctrine, which permits suits "against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see Will*, 491 U.S. at 71 n.10 (explaining that "a state official in his or her official capacity, *when sued for injunctive relief*, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (emphasis added)). The Court therefore makes no finding as to Plaintiff's claims for prospective relief against Defendant Quick in her official capacity.

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant raises the defense of qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

"[T]o trigger the plaintiff's two-part burden," however, the qualified-immunity defense must be "adequately present[ed]." *Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025) (internal quotation marks omitted).  In *Berryman*, the Tenth Circuit Court of Appeals recently explained:

> [T]o adequately present the defense, the defendant must not only explicitly raise it, *see Montoya v. Vigil*, 898 F.3d 1056, 1063–64 (10th Cir. 2018), but must also plead the defense beyond a "perfunctory assertion," *Tillmon* [*v. Douglas Cnty.*], 817 F. App'x [586,] 590 [(10th Cir. 2020)].  Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test. *See id.*; *A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (unpublished) (holding that a defendant's "qualified-immunity argument was underdeveloped" where it "contain[ed] mostly general legal statements and empty platitudes").
>
> Finally, in raising a qualified-immunity defense, a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard.  *Tillmon*, 817 F. App'x at 590; *Montoya*, 898 F.3d at 1064–65 (holding that a "failure-to-state-a-claim argument, without more, is insufficient to raise qualified immunity" because "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 527–28, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985))).

*Id.* at 1140-41.  The Tenth Circuit found that "merely recit[ing] the qualified immunity legal standard" and stating "in a single sentence, without citation to any legal authority" that "no clearly established law demonstrates [the alleged] facts give rise to personal liability" was insufficient to adequately raise the defense. *Id.* at 1141 (internal quotation marks omitted).  The Court further explained that "[a] defendant cannot simply point to 12(b)(6) arguments, without more, in support

10

of a qualified-immunity defense." *Id.*

In their motion, Defendants recite the legal standard for the qualified immunity defense but provide no argument beyond pointing to their previous arguments. *See* Dkt. No. 22, at 29 ("[A]s more fully set forth above, Plaintiff has not met his burden of showing a constitutional violation by Defendants."). Under *Berryman*, this "perfunctory assertion of qualified immunity . . . is insufficient" to adequately raise the defense in a dismissal motion. *Berryman*, 143 F.4th at 1142; *see Tillmon*, 817 F. App'x at 589 (finding defendant had not preserved qualified-immunity defense for appellate review where motion to dismiss included only Rule 12(b)(6) arguments and "a single paragraph briefly discussing the law of qualified immunity"). Thus, insofar as Defendants assert their qualified immunity defense based on the allegations in Plaintiff's Complaint, the Court finds the argument was inadequately raised.

### III.    Plaintiff's Rule 56(d) Motion

In response to a summary judgment motion, a non-moving party may seek relief under Rule 56(d) of the Federal Rules of Civil Procedure by "show[ing] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[5] The "general principle" of the rule is that "summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (alteration and internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)); *see Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006). A Rule

---

[5] Following his submission of the Rule 56(d) motion, Plaintiff filed an additional three motions requesting the same relief under Rule 56(d). These include Plaintiff's "Reassertion of Motion for Discovery" [Dkt. No. 26], "Motion for Discovery Pursuant to [Rule] 56(d)" [Dkt. No. 27], and "Motion to Compel Discovery" [Dkt. No. 28]. Because the Court finds Plaintiff's initial Rule 56(d) motion should be granted, the Court denies Plaintiff's three subsequent motions as moot.

11

56(d) affidavit "should be treated liberally unless dilatory or lacking in merit." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (internal quotation marks omitted).

To obtain relief under Rule 56(d), the nonmovant must specify in his affidavit "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (alteration and internal quotation marks omitted). "The movant's exclusive control of such information is a factor weighing heavily in favor of relief." *Price*, 232 F.3d at 783. If the Court determines relief under Rule 56(d) is warranted, the Court may "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Plaintiff submitted an affidavit in compliance with Rule 56(d). Dkt. No. 23, at 4-21. Plaintiff specified the facts he seeks, including his efforts to exhaust administrative remedies and the impediments to those efforts, affidavits from "eye-witnesses to the beating" and "eye-witnesses to the segregation," statements from inmates who heard Defendant Jordan state he assaulted Plaintiff "because he filed grievances," and recorded phone calls, video, and additional documentation of the alleged retaliation and excessive force. *Id.* at 5-9, 11-12; *see also* Dkt. No. 15. Plaintiff contends that these facts cannot be presented at this time because they were improperly excluded from the Special Report and because he was "delayed in discovering witness names," as he "was new to OSP and was segregated for several months." *Id.* at 21. As to the steps he has taken to obtain the facts, Plaintiff states he requested the inclusion of specific evidence in the Special Report but was "ignored." *Id.* (referring to Dkt. No. 15). His effort to obtain the facts is also evidenced by the multiple documents he attached to his Complaint, many of which were

12

not contained in the Special Report.  *See* Dkt. No. 1, at 23-60.  Finally, Plaintiff contends that permitting discovery will allow him to seek the materials improperly excluded from the Special Report, as well as the additional evidence of the alleged underlying constitutional violations.

"Because pro se litigants may be unfamiliar with the requirements to sustain a cause of action, they should be provided an opportunity to controvert the facts set out in the *Martinez* report." *Hall*, 935 F.2d at 1109.  Here, Plaintiff's request for such an opportunity through standard discovery is reasonable, and Defendants' arguments to the contrary are not convincing.  Defendants argue that Plaintiff's request amounts to a "fishing expedition," as Plaintiff "seek[s] information not relevant to the issues in Defendant's Motion to Dismiss/Motion for Summary Judgment."  Dkt. No. 24, at 2, 5.  Yet, Plaintiff does not seek evidence of "some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009).  Rather, he has identified specific facts pertinent to his claims and Defendants' exhaustion defense that he believes can be evidenced through the course of normal discovery.  Defendants also contend that Plaintiff's asserted facts "would not show that grievances were unavailable" to him.  Dkt. No. 24, at 4. Plaintiff claims, however, that his efforts to exhaust administrative remedies were thwarted because he was purposefully denied "copies of grievances and grievance control numbers" needed for appeal.  Dkt. No. 23, at 4.  He further contends that certain grievances were never answered. *Id.*  Such evidence is relevant to the issue of the availability of administrative remedies.

Finally, Defendants contend that discovery should not be permitted while the issue of qualified immunity is pending.  Dkt. No. 24, at 6-8.  The Court has already determined that, pursuant to *Berryman*, Defendants did not adequately present the defense under Rule 12(b)(6). *See Berryman*, 143 F.4th at 1140-42.  Even if the Court were to assume Defendants' assertion of

qualified immunity was sufficient for purposes of raising the defense on summary judgment,[6] Plaintiff's Rule 56(d) affidavit "demonstrate[s] a connection between the information he would seek in discovery and the validity of the defendant[s'] qualified immunity assertion." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (alteration omitted) (quoting *Lewis*, 903 F.2d at 754); *see* Dkt. No. 23, at 18-20 (Plaintiff discussing qualified immunity); Dtk. No. 22, at 29 (Defendants focusing qualified immunity assertion solely on whether Plaintiff "show[ed] a constitutional violation by Defendants").

For these reasons, the Court finds Plaintiff's Rule 56(d) motion should be granted. The Court further determines that denial of Defendants' motion for summary judgment without prejudice is appropriate. *See* Fed. R. Civ. P. 56(d)(1); LCvR 56.1(a) (providing that the Court may grant leave for a party to file more than one Rule 56 motion).

## IV.     Conclusion

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion to Dismiss and/or Motion for Summary Judgment [Dkt. No. 22] is GRANTED IN PART and DENIED IN PART without prejudice. Plaintiff's claims for damages against Defendant Quick in her official capacity are dismissed without prejudice. The motion is DENIED WITHOUT PREJUDICE in all other respects.

(2) Plaintiff's Rule 56(d) Motion [Dkt. No. 23] is GRANTED.

(3) Plaintiff's Reassertion of Motion for Discovery [Dkt. No. 26], Motion for Discovery Pursuant to Rule 56(d) [Dkt. No. 27], and Motion to Compel Discovery [Dkt. No. 28] are

---

[6] It is not clear whether the standards articulated in *Berryman* extend to qualified immunity defenses asserted in motions for summary judgment. *See Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1220-21 (10th Cir. 2025).

14

DENIED as moot.

(4) Defendants shall file their Answer(s) to Plaintiff's Complaint within fourteen (14) days of this Order. Fed. R. Civ. P. 12(a)(4). The Court will then enter a scheduling order.

IT IS SO ORDERED this 19th day of March, 2026.

_____

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE